**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **STEVE R. BARNES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 6:17-CV-586-JDK-KNM** |
| **PROVIDENT LIFE AND ACCIDENT** | § | |
| **INSURANCE COMPANY,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER ADOPTING REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Steve Barnes sued Provident Life and Accident Insurance Company for denying his claim for disability benefits. The case was referred to United States Magistrate Judge K. Nicole Mitchell pursuant to 28 U.S.C. § 636. On February 13, 2019, United States Magistrate Judge K. Nicole Mitchell issued a Report and Recommendation (Docket No. 37), recommending that Defendant's Motion Regarding the Applicability of ERISA (Docket No. 25), construed as a motion for partial summary judgment, be granted. Docket No. 37 at 10. The Magistrate Judge further recommends finding that Barnes's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). *Id.*

Barnes timely filed objections on February 27, 2019 (Docket No. 38), and Provident filed a response on March 13, 2019 (Docket No. 39). As explained below, after conducting a *de novo* review, the Court **OVERRULES** Barnes's objections and **ADOPTS** the Report and Recommendation.

# I.

As noted in the Magistrate Judge's Report, Barnes does not dispute the facts presented in Provident's motion.  Docket No. 37 at 5.  Barnes is a former assistant vice president at Discount Tire Co., Inc.  Docket No. 1 at ¶ 4; Docket No. 25 at ¶ 1.  Discount Tire "facilitates access to individually owned disability insurance policies for its executives by managing the payments of premiums for individual disability insurance policies that executives apply for and own."  Docket No. 25, Ex. 3 at *2.  Discount Tire "makes the premium payment" and does not deduct the premium amounts from an executive's "executive compensation," but the "amount of that premium is reported as taxable income to the Executive."  *Id.* at *2–3.  Barnes was an executive at Discount Tire and was therefore eligible for these disability insurance policies.  *Id.* at *3.

Provident and Discount Tire entered into a Salary Allotment Agreement that "was prepared in connection with a program established by Discount Tire to provide certain of its employees with disability coverage through individual disability income policies issued by Provident."  Docket No. 25, Ex. 2 at *3.  The Salary Allotment Agreement "provides that Discount Tire will 'pay in full the required premiums for such policies and [] remit such premiums' to Provident."  *Id.* at *3, *11.  Provident also placed employees like Barnes into a "specific risk number," which resulted "in both the ability to provide additional insurance benefits and a reduction in premiums for the members of the group."  *Id.* at *3–5.  In particular, under his specific risk numbers, Barnes was eligible to receive a "35% premium discount" on his disability insurance policies.  *Id.* at *3–4.  Provident issued two policies to Barnes consistent with the above on March 1, 2004.  *Id.* at *4.

In 2006, Discount Tire employees like Barnes "became eligible for more guaranteed standard issue coverage with Provident" through a Supplemental Income Protection Plan.  *Id.* at *6–7.  Similar to Barnes's first two policies, Discount Tire was responsible for the premium

contributions, and Barnes was eligible for a 40% premium discount under the plan.  *Id.*  Provident issued a policy under this plan to Barnes on January 1, 2006.  *Id.* at *7.

In early 2016, Barnes was unable to perform the "duties of a major corporate executive" and made a claim for disability benefits under all three policies.  Docket No. 1 at ¶ 8.   Initially, Provident approved the claim and began to pay benefits to Barnes.  *Id.* at ¶ 9.  Shortly thereafter, however, Provident required Barnes to submit to an independent medical examination, and on March 30, 2017, Provident reversed its prior approval of Barnes's claim and ceased paying benefits.  *Id.*

Barnes filed this lawsuit on October 16, 2017, bringing state law claims for breach of contract, unfair settlement practices, misrepresentation of policy benefits, breach of duty of good faith and fair dealing, and a violation of the prompt payment statute.  *Id.* at ¶¶ 14–20.  In the alternative, Barnes asserted an ERISA claim.  *Id.* at ¶ 21.  After approximately four months of discovery, Provident filed a Motion Regarding the Applicability of ERISA, arguing that all of Barnes's state-law claims are preempted by ERISA.  Docket No. 25 at 15.  Barnes filed a response to the motion on May 15, 2018.  Docket No. 31.  The Magistrate Judge issued a Report and Recommendation, construing Provident's motion as a motion for partial summary judgment and recommending that the motion be granted.  Docket No. 37.  Barnes timely filed objections on February 27, 2019 (Docket No. 38), and Provident filed a response on March 13, 2019 (Docket No. 39).

## II.

This Court reviews objected-to portions of the Magistrate Judge's Report and Recommendation de novo.  FED. R. CIV. P. 72; 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made.").  In conducting a de novo review, the Court examines the entire record and makes an independent assessment under the law.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc), *superseded on other grounds by statute*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

### III.

The Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), provides: "[T]he provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).  To determine whether a plan qualifies as an ERISA employee benefit plan, the Court asks whether the plan "(1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan'—establishment or maintenance by an employer intending to benefit employees."  *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

Here, the Magistrate Judge held that Discount Tire's disability coverage satisfied all three prongs and therefore concluded that the plan was an ERISA plan.  Docket No. 37.  Barnes objects to the Magistrate Judge's conclusion on all three prongs.  Docket No. 38 at 2.  Specifically, Barnes objects to (a)"the finding that a plan exists"; (b) the finding that the plan does not fall within the safe harbor; and (c) "the conclusion Plaintiff's employer established or maintained a plan without evidence of the employer's intent."  *Id.*  The Court analyzes each objection in turn.

**A.**

Barnes first argues that to show a plan exists, there "must be some ongoing administrative scheme," and here, an administrative scheme is lacking.  Docket No. 38 at 3–5.  Barnes submits that there is no plan document or evidence that Discount Tire played a role in administering its disability coverage program.  *Id.*

Under ERISA, an "employee welfare benefit plan" is any:

> [P]lan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1).  The Court may determine that a plan exists if "a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."  *Meredith*, 980 F.2d at 355 (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc)).

"By its express terms, ERISA encompasses welfare plans provided through the purchase of insurance."  *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir. 1990).  "Moreover, it is a common practice for employers to provide health care benefits to their employees through the purchase of a group [] insurance policy from a commercial insurance company."  *Id.*  "A formal document designated as 'the Plan' is not required to establish that an ERISA plan exists."  *Id.* at 241.  What matters is whether a reasonable person could ascertain its terms such as the benefits, beneficiaries, source of financing, and terms and conditions of coverage.  *Meredith*, 980 F.2d at 355; *Mem'l Hosp. Sys.*, 904 F.2d at 240–41.

The Court overrules Barnes's objection.  Provident established that a plan existed to provide Discount Tire executive employees, like Barnes, benefits in the event of disability through the purchase of disability insurance.  In particular, Provident submitted uncontroverted summary

judgment evidence that Discount Tire created a risk group to provide insurance benefits to employees at a discounted rate and paid the premiums on the disability insurance at issue.  Docket No. 25, Ex. 2 at *3–8.  The Supplemental Income Protection Plan, moreover, outlines the benefits and terms and conditions of the insurance policies.  *Id.* at *40–44.  A reasonable person could readily ascertain the intended benefits, beneficiaries, source of finances, and procedures for receiving benefits.

Barnes cites several cases to argue that an employer must adopt an administrative scheme for a plan to exist.  But unlike here, the cited cases do not involve the purchase of insurance for employees by the employer.  Instead, most of the cases cited by Barnes involve severance or annuity benefits that required only a one-time, lump-sum payment.[1]  ERISA did not apply in those cases because ERISA preemption relates to "*plans*, rather than simply to *benefits*."  *Fort Halifax Packaging Co.*, 482 U.S. at 7–12.  A "requirement of a one-time, lump-sum payment triggered by a single event" is not a plan because it "requires no administrative scheme whatsoever to meet the employer's obligation."  *Id.* at 12.  "To do little more than write a check hardly constitutes the operation of a benefit plan."  *Id.*

This case is more like *Smith v. Massachusetts Mutual Life Insurance Co.*, which involved a similar disability insurance program.  The court in that case found that a plan existed because the "benefits and procedures for submitting claims associated with Smith's Mass Mutual plan [were]

---

[1] *See Fort Halifax Packaging Co., Inc. v. Coyne*, 482 U.S. 1, 7–12 (1987) (holding that "a one-time, lump-sum [severance] payment" is not a plan for ERISA purposes); *Tinoco v. Marine Chartering Co*., 311 F.3d 617, 621 (5th Cir. 2002) (holding that there was no ERISA preemption where a severance benefit offered employees "the choice of a lump-sum payment or a stream of payments until they reached the age of 62.  Regardless of how Appellees chose to receive those payments, the total amount to be paid was based on a one-time calculation using a fixed formula"), *abrogated on other grounds by Gomez v. Ericsson, Inc*., 828 F.3d 367 (5th Cir. 2016); *Cantrell v. Briggs & Veselka Co*., 728 F.3d 444, 449 (5th Cir. 2013) (holding that there was no ERISA preemption where the amount provided under a deferred compensation arrangement was "'based on a one-time calculation using a fixed formula,' and writing a check each quarter 'is hardly an administrative scheme.'" (quoting *Tinoco*, 311 F.3d at 622)); *Peace v. Am. Gen. Life Ins. Co*., 462 F.3d 437 (5th Cir. 2006) (involving a "single-premium annuity benefit akin to a one-time severance benefit"); *Fontenot v. NL Indus., Inc*., 953 F.2d 960 (5th Cir. 1992) (involving a severance benefit with a one-time, lump-sum payment).

outlined in the disability-income policy," and the "beneficiaries of the plan were selected employees of [the employer] and the source of financing was [the employer]."  No. A-10-CA-021-LY, 2010 WL 11601284, at *2 (W.D. Tex. June 30, 2010).  Accordingly, the Court agrees with the Magistrate Judge and finds that a plan exists.

## B.

Under the second prong—whether the plan falls within the safe harbor exclusion from ERISA—Barnes objects to the Magistrate Judge's finding "that the premiums were paid by Discount Tire."  Docket No. 38 at 6.  Barnes argues that he "incurred the actual cost" and that Discount Tire only "remit[ted] the premium payments to [Provident]."  *Id.*  He states that he incurred the actual cost because the premiums were included in his earnings, not his gross pay, and therefore he was "taxed on this premium amount as part of his taxable income."  *Id.*  Barnes also objects to the Magistrate Judge's finding that Discount Tire contributed to the plan by negotiating a premium discount.  *Id.* at 7.  He argues that there "is no evidence that Discount Tire actively bargained for or sought any particular discount via 'negotiations' with [Provident]."  *Id.*

A plan falls within the safe harbor, and is therefore excluded from ERISA, if: "(1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan."  *House v. Am. United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007) (citing 29 C.F.R. § 2510.3-1(j)(1)–(4)).  "The plan must meet all four criteria to be exempt from ERISA."  *Id.*; *McNeil v. Time Ins. Co*., 205 F.3d 179, 190 (5th Cir. 2000).

The Magistrate Judge concluded that Barnes's plan did not meet the first and third criteria, and therefore found that Discount Tire's plan fell outside the safe harbor.  Docket No. 37 at 8–9.  The Court agrees and overrules Barnes's objections.

*First*, the uncontroverted summary judgment evidence establishes that Discount Tire contributed to the plan.  As an initial matter, the Court finds some support for Barnes's argument that Discount Tire did not contribute to the plan because even though Discount Tire paid his premiums, the premiums were included in his taxable income.  *See Smith*, 2010 WL 11601284, at *2 ("During this period, Five Star reported the premium payments as income to Smith to the Internal Revenue Service, and Smith paid the requisite income taxes on those amounts.  Thus, the premium payments were effectively made by Smith and were not a contribution to the plan by Five Star."); *Acuna v. Conn. Gen. Life Ins. Co.*, No. 5:05-CV-22 (DF), 2006 WL 8440637, at *4 & n.2 (E.D. Tex. Jan. 3, 2006) ("If premiums are treated as taxable income, the employee is paying taxes on the amount of her income paid toward her premiums.  This is the equivalent of an employee receiving her paycheck and paying the premiums directly.").  *But see D'Elia v. Unum Life Ins. Co. of Am.*, 223 F. Supp. 3d 380, 389 (E.D. Penn. 2016) ("Even to the extent Plaintiff could prove that AIU was simply advancing premiums that he ultimately paid, such advancements would still constitute interest-free loans that amounted to contributions to the Policies.").

The Court nevertheless finds that Discount Tire contributed to the plan because Barnes received discounted premiums.  The uncontroverted summary judgment evidence shows that Barnes received a 35% discount on his first two policies and a 40% discount on his third policy. Docket No. 25, Ex. 2 at *3–7, *40, *47.  Further, the evidence shows that Provident "provided the discounted premiums because of the role Discount Tire played in securing the policies for Barnes (and other employees at Discount Tire), and Barnes would not have been eligible to receive the discounted premiums if he had applied for the policies as an individual."  *Id.* at *4–5.  These types of premium discounts are a "constructive contribution" for safe harbor purposes.  *House*, 499 F.3d at 449–50; *Smith*, 2010 WL 11601284, at *2.  The first safe harbor criteria is therefore not met.

*Second*, the Court agrees with the Magistrate Judge that the third safe harbor criterion is not met because Discount Tire's role was not limited to collecting premiums and sending them to the insurer.  The Magistrate Judge found that obtaining premium discounts for employees like Barnes amounted to sufficient employer involvement to exclude the plan from the safe harbor. Docket No. 37 at 9.  Barnes argues that there is no evidence that Discount Tire "actively bargained for" or negotiated for the premium discounts.  Docket No. 38 at 7.  But the uncontroverted summary judgment evidence shows that Provident "provided the discounted premiums because of the role Discount Tire played in securing the policies for Barnes (and other employees at Discount Tire)."  Docket No. 25, Ex. 2 at *4–5.  Further, as Provident argued in its motion, Discount Tire not only obtained premium discounts but also "made disability coverage available to its employees, executed the Salary Allotment Agreement [and the Supplemental Income Protection Plan] to initiate the program . . . , enabled them to apply on a group basis, handled the premium invoices, prepared and remitted the premium checks, [and] handled the related bookkeeping." Docket No. 25 at 12–13, Ex. 2 at *3–8.  This constitutes "more than simply allowing the insurer to advertise and the collecting and remitting [of] premium payments."  *Smith*, 2010 WL 11601284, at *3.

Accordingly, the Court agrees with the Magistrate Judge that Discount Tire's plan falls outside the safe harbor.

## C.

Finally, Barnes objects to the finding that Discount Tire established and maintained the plan intending to benefit its employees.  Barnes argues that Discount Tire merely submitted premium payments to the insurer for convenience and that there is no evidence of an intent to benefit employees.  Docket No. 38 at 7–9.

The analysis for this third factor involves two elements: "(1) whether the employer established or maintained the plan, and (2) whether the employer intended to provide benefits to its employees." *Shearer v. Sw. Serv. Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008). "To determine whether an employer 'established or maintained' an employee benefit plan, 'the court should [focus] on the employer . . . and [its] involvement with the administration of the plan.'" *Id.* (quoting *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991)). While the mere purchase of an insurance policy may not be enough to establish the existence of an ERISA plan, "'the purchase [of insurance] is evidence of the establishment of a plan, fund, or program' and . . . 'the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established.'" *Id.* (quoting *Mem'l Hosp. Sys.*, 904 F.2d at 242).

Barnes argues that Discount Tire's intent was to "remit[] payments 'for convenience'" and that Discount Tire "never reported or maintained the policies as an ERISA plan." Docket No. 38 at 8. But whether Discount Tire understood its plan to be an ERISA plan is irrelevant. *See McNeil v. Time Ins. Co.*, 977 F. Supp. 424, 430 (N.D. Tex. 1997) ("Under controlling Fifth Circuit authority, that McNeil did not understand himself to be establishing an ERISA plan is of no moment . . . ."). Instead, as the Magistrate Judge properly concluded, it is sufficient that Discount Tire "desired to provide a plan of [disability] insurance for" its employees. *Id.* The uncontroverted summary judgment evidence, moreover, shows that Discount Tire established or maintained a plan for its employees, paid the premiums for disability insurance policies by sending checks to Provident, executed the Salary Allotment Agreement and the Supplemental Income Protection Plan, enabled its employees to apply on a group basis, handled the premium invoices and the

related bookkeeping, and procured discounts on the premiums for its employees.  Docket No. 25, Ex. 2 at *3–8.

Accordingly, the Court agrees with the Magistrate Judge that Discount Tire established or maintained the plan intending to benefit employees like Barnes.  *See, e.g.*, *Smith*, 2010 WL 11601284, at *3.

## IV.

This Court has conducted a careful *de novo* review of the record and the Magistrate Judge's proposed findings and recommendations.  *See* 28 U.S.C. § 636(b)(1) (the district judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Having made a *de novo* review of the objections raised by Barnes to the Magistrate Judge's Report, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and that Barnes's objections are without merit. The Court therefore adopts the findings and conclusions of the Magistrate Judge as the findings and conclusions of the Court.

Accordingly, it is hereby **ORDERED** that the Report and Recommendation (Docket No. 37) be **ADOPTED**.  It is further

**ORDERED** that Provident's Motion Regarding the Applicability of ERISA (Docket No. 25), construed as a motion for partial summary judgment, is **GRANTED**.  The disability insurance policies at issue in this case are ERISA employee benefit plans and Barnes's state law claims are **PREEMPTED** by ERISA.  29 U.S.C.§ 1144(a); *Meredith*, 980 F.2d at 358.

So **ORDERED** and **SIGNED** this **6th**   day of  **July, 2020.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE